```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Mariah McGowen

    v.                                    Civil No. 15-cv-329-JD
                                                Opinion No. 2016 DNH 056

Carolyn W. Colvin,
Acting Commissioner

## O R D E R

Mariah McGowen seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for supplemental security income.  McGowen moves to reverse and remand the decision, contending that the Administrative Law Judge ("ALJ") erred in finding substantial improvement following a closed period of disability, in evaluating her treating source opinions, in interpreting raw medical data for purposes of the residual functional capacity assessment, and in finding her statements not entirely credible.  The Acting Commissioner moves to affirm.

### Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found

facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background

Mariah McGowen applied for supplemental security income benefits in March of 2012 when she was eighteen years old, alleging disability due to chronic polycystic kidney disease, Type A, and bipolar disorder.  She later amended the onset date of disability to March 6, 2012.  She had completed the eleventh grade and had no previous work experience.

McGowen's medical history as presented in the parties' joint statement of material facts begins in February of 2012 when she was seen by Mary Gheen, APRN, for follow-up of her bladder and bowel dysfunction.  Nurse Gheen noted that McGowen's condition caused her to have urinary urgency and frequency with accidents.  She found that the medication Ditropan, prescribed to calm the bladder, was working well.

Five days later, McGowen had an appointment with Dr. Sarah Oxnard to follow-up on her asthma.  Dr. Oxnard found that McGowen's asthma was mild but persistent and caused minor limitations with activity.  In March, her asthma was again found to be mild but persistent.

In early March of 2012, McGowen was hospitalized for a urinary tract infection.  X-rays showed that she had dilation of the large and small bowels but not an obstruction.  A kidney ultrasound showed multiple cysts in both kidneys and an enlarged kidney.

Dr. Adam Weinstein, McGowen's nephrologist, wrote a statement about McGowen's condition on March 9, 2012.  He stated that McGowen had polycystic kidney disease with high blood pressure, urinary tract infections, and cyst infections.  She had developed severely enlarged cystic kidneys with chronic pain that was sometimes severe to the point of being disabling.

McGowen went to the hospital on April 20 and April 26, 2012, for abdominal pain.  At the visit on April 26, the attending physician found that her abdomen was tender and that she appeared to be in pain.  The CT scan of her kidneys showed multiple cysts.

On May 2, 2012, Dr. John MacEachran reviewed McGowen's medical records and completed a physical residual functional capacity assessment for purposes of her application.  Dr.

MacEachran found that McGowen was capable of work at the light exertional level with postural limitations.  He noted that McGowen was an eighteen year old who had polycystic kidney disease that caused infrequent pain crises.  He concluded that the pain crises were not sufficiently frequent to preclude full time work.

McGowen saw Dr. Weinstein on May 21, 2012.  Dr. Weinstein noted that she had had a pain flare-up because of a change in her living situation but that had resolved.  On examination, Dr. Weinstein found some abdominal tenderness and otherwise normal results.  He noted that her right kidney had reduced in size, both kidneys had cysts, her renal ultrasound was stable, and her blood pressure was well-controlled.  Dr. Weinstein also found that McGowen no longer needed Dilaudid, a pain medication.

On May 22, 2012, Sandra Vallery, Ph.D., did a comprehensive psychological profile of McGowen for Disability Determination Services.  McGowen reported a variety of psychological issues, including six years of therapy and a diagnosis of bipolar disorder.  On examination, Dr. Vallery found that McGowen was oriented, had average intelligence and knowledge, had fair to good memory, and had other normal results.  Dr. Vallery found no evidence of psychosis or suicidal ideation.  The results of the mental status examination show no cognitive impairment.  Dr. Vallery concluded that McGowen could complete several activities

4

during a day, could pace herself and complete tasks, could remember short and simple instructions but not detailed instructions, could maintain attention but had difficulty with concentration, could maintain attendance, and could interact appropriately with supervisors.

On June 1, 2012, Dr. Michael Schneider reviewed McGowen's records and completed a Mental Residual Functional Capacity Assessment. Dr. Schneider found that McGowen's records showed she could understand, remember, and carry out short and simple instructions; concentrate for two-hour periods; keep a regular schedule; sustain full-time work; and tolerate routine changes in a work setting.

On July 10, 2012, McGowen went to the emergency room because of abdominal pain. The examining physician found that she was in mild to moderate distress, she was tender in the upper left part of her abdomen, and she had swelling in her feet. A series of abdominal tests showed a possible partial small bowel obstruction. Also in July, Community Partners discontinued her therapy, after she had not been in therapy for ninety days, and noted her progress.

McGowen went to the emergency room on November 1, 2012, after four days of flank pain. The attending physician found mild abdominal tenderness and diagnosed renal colic. She saw Dr. Weinstein on November 14, 2012, who noted that McGowen had

been doing reasonably well until she developed flank pain during the past month. The renal ultrasound showed that her kidney had decreased in size but that both kidneys had renal cysts. McGowen's blood pressure was well controlled.

McGowen had an appointment with Priscilla Merrill, APRN, at Lamprey Health Care, on January 30, 2013. Nurse Merrill found no acute distress and other normal results.

In June of 2013, McGowen was seen by Regina Osime, LCSW at Ware Adult Day Services. McGowen was anxious and reported paranoia and auditory hallucinations. She was inattentive, had racing thoughts, and her concentration and judgment were poor. Dr. Olujimi Adefisan saw McGowen the next day at Ware Adult Day Services, and she told him that she wanted to return to treatment. Dr. Adefisan found that McGowen's behavior, speech, mood, affect, thought processes, memory, cognition, and attention were within normal limits.

In July of 2013, McGowen went to the emergency room of a hospital in Waycross, Georgia, because of dysuria (painful urination). William Benz, P.A. found that McGowen was in mild distress with left flank tenderness. Benz diagnosed an acute urinary tract infection.

McGowen saw Nurse Merrill in August of 2013 and reported that she was not having pain and that her medication was helping her symptoms. Nurse Merrill found McGowen's mental health was

improved and that her blood pressure was better.  She also noted that because of not having insurance, McGowen had not seen her nephrologist in six months and that she would make an appointment when she was back on her mother's insurance in April of 2014.

In September of 2013, McGowen had another episode of flank pain and went to the emergency room.  The attending physician found that she was not in acute distress but was tender in the upper left quadrant.  A CT scan showed renal cysts but no kidney stones.  An X-ray showed new punctuate calcifications in the abdomen.  Medical appointments in December of 2013 and January of 2014 showed that McGowen was not in acute distress and that her psychological aspects were normal.

McGowen went to the emergency room three times during a week in the middle of February of 2014.  She presented with acute distress and diffuse tenderness in her abdomen.  An x-ray showed no signs of a bowel obstruction.  The attending physician at the last visit noted that she had been there three times but concluded that she did not meet the criteria for admission.  On February 19, the same day as her last visit to the emergency room, Nurse Merrill found that McGowen was diffusely tender over her abdomen, that she appeared ill, and that she had CVA tenderness, which is related to the kidneys.  Nurse Merrill concluded that McGowen was unable to work at that time.

7

Dr. Weinstein completed a second Physical Impairment Medical Source Statement on February 20, 2014.  He wrote that when McGowen's kidney condition was under control, she would rarely or only occasionally have pain that would interfere with her attention and concentration.  When she had a flare-up, however, her pain would constantly interfere with her attention and concentration.  He thought she could stand or walk for less than two hours in a work day, could sit for four to six hours but less during a flare-up, she would need to walk at times during the day, she would need to shift positions, and would need unscheduled breaks every five to ten minutes.  He also found she could lift or carry less than ten pounds and had postural limitations.  Dr. Weinstein also added that McGowen would miss more than four days of work in a month.

Nurse Merrill also completed a Physical Impairment Medical Source Statement on February 20, 2014.  She wrote that emotional factors contributed to the severity of McGowen's symptoms, that McGowen frequently experienced pain that would interfere with her attention and concentration, but that she could do a low stress job.  Nurse Merrill found no physical exertional limitations but thought that McGowen would miss one day of work per month.

Nurse Merrill saw McGowen on February 25, 2014, for urinary urgency and frequency with back pain.  McGowen was not in acute

8

distress but had CVA tenderness.  She was depressed and her mood disorder had deteriorated.

A hearing on McGowen's application was held before an ALJ on March 6, 2014.  McGowen was represented by an attorney and testified.  She said that she was then twenty years old and had stopped attending school in her senior year of high school.  She testified that her primary problem was kidney disease and that stress triggered her pain and explained the treatment she received and her medications.  McGowen also testified that she had been diagnosed with a variety of mental health disorders and had been prescribed medication for her personality issues.

McGowen's mother testified that McGowen had a great deal of stress because of her kidney condition, which increased her pain.  A vocational expert also testified at the hearing.

In a decision issued on March 21, 2014, the ALJ found that McGowen had polycystic kidney disease with chronic abdominal pain, asthma, bipolar disorder, mood disorder, anxiety, personality disorder, attention deficit hyperactivity disorder, and polysubstance abuse.  The ALJ found that none of the impairments met or medically equaled a listed impaired.  He concluded that McGowen retained the functional capacity to do light work with postural and environmental limitations and limited to simple and unskilled work in a low-stress job with only occasional interaction with co-workers and the public.

Based on the testimony of the vocational expert, the ALJ found that McGowen was not disabled.

## Discussion

McGowen contends that the ALJ erred in finding that she is not disabled. She asserts that the ALJ found that she was disabled for a closed period, and seeks payment for that time, and that the ALJ improperly found that she had improved so that she was no longer disabled. She also contends that the ALJ did not properly weigh the medical opinion evidence, erred in assessing her residual functional capacity based on his own interpretation of the medical records, and did not properly assess her credibility. The Acting Commissioner disputes McGowen's theory of a closed period of disability and contends that the decision is supported by substantial evidence.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 416.920. The claimant bears the burden through the first four steps of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Acting Commissioner has the burden of showing that the claimant is employable. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

### A. Closed Period of Disability

McGowen argues that the ALJ found a closed period of disability and subsequent improvement based on the ALJ's "many remarks about [McGowen's] disabling symptoms from 2010, 2011, and into 2012." Based on that dubious conclusion, McGowen then asserts that the ALJ erred in finding that she had improved after that time so that she was no longer disabled.

Because McGowen seeks supplemental security income benefits, the relevant period for determining disability began on the date of her application, March 6, 2012. 20 C.F.R. § 416.501; see also Vazquez v. Comm'r of Social Security, 2015 WL 4562978, at *1 n.3 (S.D.N.Y. July 21, 2015); Lekousis v. Colvin, 2015 WL 3856543, at *1 n.2 (N.D. Ill. June 19, 2015). In addition, to qualify for supplemental security income benefits, the claimant must show that the disability is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

The ALJ found that McGowen was not disabled from her alleged onset date, March 6, 2012, through the date of the decision in March of 2014. McGowen's theory of a closed period of disability depends on an alleged disability before the onset date. Therefore, she has not shown any error by the ALJ based on a theory of a closed period of disability.

B.  Medical Opinions

McGowen contends that the ALJ did not properly evaluate the opinions of her nephrologist, Dr. Weinstein.  She also contends that the ALJ erred in relying on the opinion of the state agency reviewing physician, Dr. MacEachern, because he did not review the medical evidence after May of 2012.

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 416.927(b).  Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention.  § 416.927(c).  In the decision, the ALJ must explain the weight given to the medical opinions, including the opinions of state agency reviewing physicians.  § 416.927(c)(2) & § 416.927(e)(2)(ii).

1.  Dr. Weinstein's opinions

A treating physician's opinion is given controlling weight, because of the nature of the treating relationship, if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."  § 416.927(c)(2).  "If the treating physician's opinion is inconsistent with other evidence in the

record, the conflict is for the ALJ, not the court, to resolve." Rivera v. Colvin, 2016 WL 778360, at *10 (D. Mass. Feb. 26, 2016).

Dr. Weinstein provided opinions about McGowen's condition and the effects of her kidney disease on March 9, 2012, and February 20, 2014. In both, Dr. Weinstein explained that McGowen had kidney disease that caused chronic pain which occasionally became severe. During episodes of severe pain, Dr. Weinstein said, McGowen would not be able to work. His opinion on February 20, 2014, was in the form of a Physical Impairment Medical Source Statement, which included an evaluation of McGowen's capacity to walk, stand, sit, carry weight, and do postural activities.

In the decision, the ALJ first considered an assessment done by Dr. Weinstein in April of 2010, before the alleged onset date, and gave that opinion only some weight because the ALJ found that the medical evidence after March of 2012 showed improvement and that McGowen would not require regular absences from work. The ALJ also gave some weight to Dr. Weinstein's assessment in March of 2012 but found that the opinion was more pertinent to McGowen's condition prior to March of 2012 rather than for the period afterwards. The ALJ credited a new medication prescribed by Dr. Weinstein in November of 2012 for improvement in McGowen's kidney condition. The ALJ also found

13

that McGowen's medical records "from late 2012 and into 2013" did not show that her kidney disease would cause constant interference with her ability to concentrate or difficulty in maintaining attendance at work.  Further, the ALJ found no support in the record for limiting McGowen's physical ability to less than the light exertional level.

The ALJ gave little weight to Dr. Weinstein's opinion from February of 2014.  The ALJ inferred that because Dr. Weinstein had not treated McGowen after November of 2012, she had not needed treatment.  In response to McGowen's explanation that she did not see Dr. Weinstein during that period because she did not have medical insurance, the ALJ noted that McGowen received other medical treatment during that time.

The ALJ's explanation for the weight given to Dr. Weinstein's opinions is problematic.  The insurance issue is far from clear, particularly because when Nurse Merrill advised McGowen to see Dr. Weinstein, McGowen said she would go when she could be covered under her mother's insurance.  Those circumstances suggest that her treatment with Nurse Merrill was not affected by the lack of insurance.  In addition, the ALJ gave little weight to Nurse Merrill's opinion about the disabling effects of McGowen's kidney disease, because he found the opinion was not supported, again because of the lack of treatment between late 2012 and into 2013.  It is unnecessary to

14

determine whether reversal would be required based on Dr. Weinstein's opinions, however, because of the problem with the ALJ's reliance on the opinion of state agency physician, Dr. John MacEachern.

### 2. Dr. MacEachern's Opinion

The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions of treating or examining medical sources.  § 416.927(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and XVI:  Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996).  A state agency physician's opinion based on a review of the record can be given weight only to the extent the opinion is supported by evidence in the record.  SSR 96-6p, 1996 WL 374180, at *2.  An opinion that is based on review of only part of the record cannot provide substantial evidence to support the ALJ's residual functional capacity finding if other evidence, not reviewed, supports the claimant's limitations.  Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 F. App'x 19, 20 (1st Cir. 2006); Jones v. Colvin,

2015 WL 687219, at *13 (D.R.I. Feb. 18, 2015); Spielberg v. Astrue, 2011 WL 4971971 at *6 (D.N.H. Oct. 18, 2011).

In this case, the ALJ gave great weight to the opinion of state agency physician, Dr. MacEachern, which was completed based on a review of McGowen's medical records up to May 2, 2012. The ALJ gave little weight to the two opinions provided by McGowen's nephrologist, Dr. Weinstein, and her primary care provider, Nurse Merrill, because the ALJ found that those opinions were not supported by the record. McGowen contends that the ALJ erred relying on Dr. MacEachern's opinion because he did not review any of her records after May 2, 2012, and she notes the treatment she received during that time.

The ALJ found that McGowen's medical records after Dr. MacEachern's opinion in May of 2012 show improvement in her condition. The records themselves, however, are not as clear as the ALJ presents them. McGowen was ill in July of 2012 and was treated at Lamprey Health Care and the hospital emergency room. She was treated at emergency rooms in November of 2012, in July of 2013, September of 2013, and February of 2014. During that period she did not have insurance, and Nurse Merrill noted in her treatment record that McGowen should be seeing her nephrologist. Because Dr. MacEachern did not review the medical records after May of 2012, he did not provide any opinion about the significance of McGowen's treatment during that time.

16

Therefore, the ALJ has not properly supported the weight he attributed to Dr. MacEachern's opinion.

C. Residual Functional Capacity

McGowen challenges the ALJ's residual functional capacity assessment on the grounds that no medical opinion supports the assessment of her condition after May of 2012 and that the ALJ interpreted her medical records himself to assess her functional capacity. The Acting Commissioner contends that the ALJ properly relied on Dr. MacEachern's opinion.

A residual functional capacity assessment determines the most a person can do in a work setting despite her limitations caused by impairments. 20 C.F.R. § 416.945(a)(1). The Acting Commissioner's residual functional capacity assessment will be affirmed if it is supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

The ALJ interpreted McGowen's medical records from late 2012 and 2013 to show improvement. There is no medical opinion to support the ALJ's assessment of the record. Instead, as McGowen charges, it appears that the ALJ interpreted McGowen's medical records on his own to evaluate the extent of her illness and functional loss because of kidney disease.

17

As a lay person, an ALJ is "not qualified to interpret raw medical data in functional terms." Nguyen, 172 F.3d at 35; Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). For that reason, an expert generally is necessary to provide a functional capacity assessment based on medical data. Manso-Pizarro, 76 F.3d at 17. Nevertheless, an ALJ can "render[] common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990); accord Couture v. Colvin, 2015 WL 3905273, at *5 (D.N.H. June 25, 2015); Pelletier v. Colvin, 2015 WL 247711, at *17 (D.R.I. Jan. 20, 2015).

The exception for a common-sense finding without a supporting expert opinion applies only when the medical findings in the record show relatively little impairment. Manso-Pizarro, 76 F.3d at 17. An expert opinion is necessary "unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Id. (internal quotation marks omitted). While an ALJ may assess functional capacity based on the findings of more than one medical source, the assessment still must be based on some medical findings and opinions. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987); Perry v. Astrue, 2014 WL

18

4965910, at *6 (D. Mass. Sept. 30, 2014); Frotten v. Colvin, 2014 WL 4659309, at *4 (D.N.H. Sept. 17, 2014).

Here, the ALJ relied on the opinion of Dr. MacEachern to assess McGowen's residual functional capacity, but Dr. MacEachern did not review McGowen's records after May of 2012. Although the ALJ interpreted the records after May of 2012 to show improvement, it is beyond the ability of a lay person to assess the medical evidence pertaining to McGowen's kidney disease in functional terms. Because Dr. MacEachern's opinion cannot provide substantial evidence of McGowen's functional capacity and the ALJ was not qualified to make that medical determination, the ALJ lacked substantial evidence to support his assessment.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 9) is granted. The Acting Commissioner's motion to affirm (document no. 10) is denied.

The decision of the Acting Commissioner is reversed, and the case is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

March 15, 2016

cc: Laurie Smith Young, Esq.
    Terry L. Ollila, Esq.